## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JACK J. GRYNBERG and PRICASPIAN
DEVELOPMENT CORPORATION,                     :

        Plaintiffs,                          :

          v.                               :

                         :     C.A. No. 10-1088-LPS

TOTAL COMPAGNIE FRANCAISE DES
 PETROLES, TOTAL FINA ELF, S.A.,             :
TOTAL S.A., ROYAL DUTCH PETROLEUM
 COMPANY, SHELL TRANSPORT AND                :
TRADING CO., P.L.C., SHELL PETROLEUM         :
N.V., SHELL EXPLORATION B.V., and SHELL      :
INTERNATIONAL EXPLORATION AND                :
PRODUCTION B.V. f/k/a SHELL                  :
INTERNATIONALE PETROLEUM                     :
MAATSCHAPPIJ B.V.,                           :
        Defendants.                          :

Richard A. Barkasy, Esq., SCHNADER HARRISON SEGAL & LEWIS LLP, Wilmington, DE.
David Smith, Esq. and Stephen A. Fogdall, Esq., SCHNADER HARRISON SEGAL & LEWIS
LLP, Philadelphia, PA.
    Attorneys for Plaintiffs.

Collins J. Seitz, Jr., Esq., Bradley R. Aronstam, Esq., SEITZ ROSS ARONSTAM & MORITZ
LLP, Wilmington, DE.
Graham Kerin Blair, Esq., David A. Brakebill, Esq., Andrew C. Biberstein, Esq., BAKER &
MCKENZIE LLP, Houston, TX.
Phillip B. Dye, Jr., Esq. and Jennifer H. Davidow, Esq., VINSON & ELKINS LLP, Houston, TX.
    Attorneys for Defendants Royal Dutch Petroleum Company, Shell Transport and Trading
    Co, P.L.C., Shell Petroleum N.V., Shell Exploration B.V., and Shell International
    Exploration and Production B.V. f/k/a/ Shell International Petroleum Maatschappij B.V.

Kevin J. Mangan, Esq., WOMBLE CARLYLE SANDRIGE & RICE, PLLC, Wilmington, DE.
John Bowman, Esq., Jennifer Price, Esq., Kevin Clark, Esq., KING & SPALDING LLP,
Houston, TX.
    Attorneys for Defendant Total, S.A.

## MEMORANDUM OPINION

September 18, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiffs Jack Grynberg ("Grynberg") and Pricaspian Development Corporation ("PDC") (collectively, "Plaintiffs") brought this lawsuit against defendants Total S.A. ("Total")[1] and Royal Dutch Petroleum Company, Shell Transport and Trading Co, P.L.C., Shell Petroleum N.V., Shell Exploration B.V., and Shell International Exploration and Production B.V. f/k/a/ Shell International Petroleum Maatschappij B.V. (collectively, "Shell" and, together with Total, hereinafter, "Defendants") to recover Plaintiffs' purported share of revenue from Kazakh oil fields allegedly discovered by Grynberg.

Pending before the Court are multiple motions: Defendants' Motions to Take Judicial Notice (D.I. 13; D.I. 19; D.I. 31), Plaintiffs' Motions for Leave to File Surreplies (D.I. 42; D.I. 43; D.I. 44), Plaintiffs' Motion to Strike (D.I. 26), Defendants' Motions to Dismiss (D.I. 11; D.I. 15; D.I. 17), and Defendants' Motions for Sanctions (D.I. 56; D.I. 65).

For the reasons set forth below, the Court will grant Defendants' Motions to Take Judicial Notice, grant Plaintiffs' Motions for Leave to File Surreplies, deny Plaintiffs' Motion to Strike, grant in part and deny in part Defendants' Motions to Dismiss, and grant Defendants' Motions for Sanctions.

---

[1]Total Compagnie Francaise des Petroles and Total Fina Elf, S.A. are names under which Total, S.A. previously operated; they are not separate entities.  (D.I. 12, Ex. B ¶ 12)

1

## BACKGROUND[2]

### I. The Parties

Grynberg has been engaged in the international petroleum industry for over forty years.

(D.I. 10 ¶ 18) PDC is a Texas corporation headquartered in Denver, Colorado. (*Id.* ¶ 17) PDC

is the assignee of a substantial portion of Grynberg's alleged rights relating to the instant claims.

(*Id.*)

Total is incorporated under the laws of France and operates a vertically integrated

enterprise to supply energy, chemicals, and other products throughout the world. (*Id.* ¶ 19) Shell

operates a vertically integrated enterprise to supply oil, natural gas, and other products

throughout the world. (*Id.* ¶ 20)

### II. Factual Background

In 1989, the Chairman of the Attestation Committee of the Union of Soviet Socialist

Republics invited Grynberg to Moscow to review "secret Soviet seismic data" from the Caspian

Sea, as well as data from onshore sites in Northwestern Kazakhstan. (*Id.* ¶¶ 37-38) In November

1989, Grynberg traveled to Moscow and spent one week reviewing the seismic data. (*Id.* ¶ 38)

From his analysis of the information, Grynberg mapped a Carboniferous reef in the Northeastern

Caspian Sea, close to shore. (*Id.*) Grynberg refers to the mapped area as the Greater Kashagan

Oil Fields ("GKOF"). (*Id.* ¶ 28)

Later, in November 1989, at the request of the United States Department of State,

---

[2]On a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

Grynberg gave a tour to a Kazakh delegation of his cattle feeding operations located near Denver, Colorado. (*Id.* ¶ 39) The delegation was led by the then-First Secretary of Kazakhstan, Nursultan Abishevich Nazarbaev. (*Id.*) During a dinner Grynberg hosted at his home for the delegation, Nazarbaev invited Grynberg and his team to visit Kazakhstan to consider a potential investment in oil, natural gas, and mining. (*Id.*) In response to Nazarbaev's invitation, in February 1990 Grynberg brought two teams to Kazakhstan. (*Id.* ¶ 40) One team studied Kazakhstan's oil and natural gas fields while the other team studied mining opportunities. (*Id.*) Grynberg's trip to Kazakhstan confirmed his belief that the GKOF had significant potential for oil and natural gas production. (*Id.* ¶ 41)

In July 1990, Grynberg met with representatives of ten Western oil companies, including Total and Shell, in an attempt to form a consortium to develop and produce the GKOF. (*Id.* ¶ 45) On July 20, 1990, Total accepted Grynberg's proposal to establish a joint venture pursuant to which Total agreed to pay Grynberg a net twenty percent profits interest. (*Id.* ¶ 47) Grynberg alleges that, thereafter, Total used Grynberg's confidential information and political contacts to acquire an interest in the GKOF without involving Grynberg. (*Id.* ¶¶ 50-51)

Also in July 1990, Grynberg met with Shell representatives in his Denver office. (*Id.* ¶ 53) Grynberg presented his seismic data to the Shell representatives, and the Shell representatives agreed to enter into a "joint venture" with Grynberg to develop the GKOF. (*Id.*)

In June 1993, a Total subsidiary, Shell, and other oil companies entered into a Preliminary Consortium Agreement ("PCA") with Kazakhstan, thereby forming the "North Caspian Sea Consortium" ("Consortium"). (D.I. 12 ¶ 13) Grynberg was not involved in the PCA. (*Id.*) In December 1993, the same parties, again without Grynberg, signed a Consortium

3

Agreement, granting rights to explore the Kazakh sector of the North Caspian Sea for hydrocarbons. (*Id.*) In November 1997, the members of the Consortium entered into a Production Sharing Agreement ("PSA") with the Kazakh government. (*Id.*) The PSA granted Consortium members the right to develop and produce hydrocarbons in certain blocks in the Kazakh sector of the North Caspian Sea, including the GKOF. (*Id.*)

Grynberg alleges that Defendants were only able to join the PSA due to their participation in a conspiracy spearheaded by James Giffen, an oil consultant and purported agent of the United States Government. (D.I. 10 ¶¶ 63-66) Grynberg claims that Giffen assisted in negotiating the PSA among the members of the Consortium, including Total and Shell, and the Kazakh government. (*Id.* ¶ 64) According to Grynberg, the agreement was only possible as a result of the Consortium's payment of a \$175 million dollar bribe to Kazakh officials. (*Id.* ¶ 65) Grynberg asserts that the bribe permitted the Consortium members to obtain the concession to develop the GKOF, thereby stealing Grynberg's original discovery. (*Id.*)

## III. Prior Litigation

### A. The Colorado Actions[3]

In 2003, Grynberg, Grynberg Production Corporation, and Grynberg Petroleum Company sued Total in the United States District Court for the District of Colorado. (*See* D.I. 12, Ex. 9) Grynberg simultaneously brought identical claims in the District of Colorado against Shell.[4]

---

[3]As the pending Motions to Dismiss are premised on the doctrine of claim preclusion, the Court may take judicial notice of previous related actions without converting the Motions to Dismiss into motions for summary judgment. *See M & M Stone Co. v. Pa. Dep't. of Envtl. Prot.*, 388 Fed. Appx. 156, 162 (3d Cir. July 28, 2010).

[4]The lawsuits filed against Total and Shell in the District of Colorado will be referred to collectively as the "Colorado Actions."

4

(D.I. 18 at 4)  Among other claims, Grynberg alleged that Total and Shell breached fiduciary duties owed to the plaintiffs in the Colorado Actions and were unjustly enriched when they appropriated the plaintiffs' original confidential information regarding the GKOF.  (*Id.* at 4-5; D.I. 12 at 5)  The Colorado plaintiffs sought damages equal to a twenty percent net profits share of Total's and Shell's interests under the PSA, as well as a constructive trust and an accounting. (D.I. 12 ¶ 16 & Ex. A-9 ¶¶ 42-44; D.I. 18 at 4-5)

In 2006, the District Court in Colorado granted summary judgment in favor of the defendants in both Colorado Actions on the basis that Grynberg's claims were time-barred under the Colorado statute of limitations.  *See Grynberg v. Shell Exploration B.V.*, 433 F. Supp. 2d 1229 (D. Colo. 2006); *Grynberg v. Total*, 2006 WL 1517731 (D. Colo. May 31, 2006).  On consolidated appeal, the Tenth Circuit affirmed both rulings.  *See Grynberg v. Total S.A.*, 538 F.3d 1336 (10th Cir. 2008).  On March 9, 2009, the U.S. Supreme Court denied the Colorado plaintiffs' petition for a writ of certiorari.  *See Grynberg v. Total S.A.*, 129 S. Ct. 1585 (2009).

### B.    The New York Actions

Following the Tenth Circuit's decision, PDC filed suits against Royal Dutch Shell, p.l.c. ("RDS") and Total in the United States District Court for the Southern District of New York.[5] (D.I. 12 ¶ 18; D.I. 18 at 6)  In the New York Actions, PDC sought a declaratory judgment that it was entitled to share in the profits from RDS's and Total's interest in the GKOF.  (D.I. 12 ¶ 18; D.I. 18 at 6)  The District Court held that PDC's claims were time-barred and barred under the doctrine of *res judicata*.  *See Pricaspian Dev. Corp. v. Total S.A.*, 2009 WL 4163513 (S.D.N.Y.

---

[5]The lawsuits filed against Total and RDS in the Southern District of New York will be referred to collectively as the "New York Actions."

Nov. 25, 2009); *Pricaspian Dev. Corp. v. Royal Dutch Shell,* 2009 WL 1564110 (S.D.N.Y. June

3, 2009). Accordingly, both suits were dismissed with prejudice. On appeal, the Second Circuit

affirmed the dismissals in separate summary orders. *See Pricaspian Dev. Corp. v. Total S.A.,*

397 Fed. Appx. 673 (2d Cir. Oct. 21, 2010); *Pricaspian Dev. Corp. v. Royal Dutch Shell, plc,*

382 Fed. Appx. 100 (2d Cir. June 29, 2010).

## IV.    **Procedural Background**

Plaintiffs filed the instant suit in this District on December 10, 2010. (D.I. 1) (hereinafter,

the "Original Complaint") Plaintiffs' Original Complaint asserted claims of unjust enrichment,

misappropriation of trade secrets, breach of contract, and breach of fiduciary duty. On March 16,

2011, Plaintiffs filed an amended complaint, dropping each of the foregoing causes of action.

(D.I. 10) (hereinafter, the "Amended Complaint") In their Amended Complaint, Plaintiffs assert

a due process claim as well as a claim under Article 917 of the Civil Code of the Republic of

Kazakhstan, which is a general tort liability provision. (*Id.* ¶¶ 68-81) Plaintiffs seek damages for

Defendants' alleged misappropriation of Grynberg's "original discovery" of the GKOF. (*Id.*

¶¶ 1-3, 14) Plaintiffs claim that Defendants are liable to Grynberg for twenty percent of the net

profits earned from the production of oil and natural gas in the GKOF. (*Id.* ¶¶ 19-21)

The parties completed briefing on the procedural motions on August 12, 2011. (*See* D.I.

55) The Court heard oral argument on these motions on October 31, 2011. *See* Mot. Hr'g Tr.,

Oct. 31, 2011 (D.I. 67) (hereinafter "Tr."). The parties completed briefing on Defendants'

sanctions motions on December 8, 2011. (*See* D.I. 71)

6

## LEGAL STANDARDS

### I.   Motion to Dismiss Pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks

personal jurisdiction over the defendant.  Determining the existence of personal jurisdiction

requires a two-part analysis.  First, the Court analyzes the long-arm statute of the state in which

the Court is located.  *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

Next, the Court must determine whether exercising jurisdiction over the defendant in this state

comports with the Due Process Clause of the Constitution.  *See id.*  Due Process is satisfied if the

Court finds the existence of "minimum contacts" between the non-resident defendant and the

forum state, "such that the maintenance of the suit does not offend traditional notions of fair play

and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal

quotation marks omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of

establishing, by a preponderance of the evidence and with reasonable particularity, the existence

of sufficient minimum contacts between the defendant and the forum to support jurisdiction.  *See*

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time*

*Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984).  To meet this burden,

the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2)

motion "requires resolution of factual issues outside the pleadings."  *Time Share*, 735 F.2d at 67

n. 9; *see also Philips Elec. N. Am. Corp. v. Contec Corp.*, 2004 WL 503602, at *3 (D. Del. Mar.

11, 2004) ("After discovery has begun, the plaintiff must sustain [its] burden by establishing

jurisdictional facts through sworn affidavits or other competent evidence.").

7

If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

The Supreme Court has held that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). The Third Circuit instructs that if "the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging . . . [its] burden." *Metcalfe*, 566 F.3d at 336; *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("[G]enerally . . . jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'"). Jurisdictional discovery may be denied "where the party that bears the burden of establishing jurisdiction fails to establish a threshold prima facie showing of personal jurisdiction." *S. Seafood Co. v. Holt Cargo Sys., Inc.*, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997) (internal quotation marks omitted). "A prima facie case requires factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the

8

party] and the forum state." *Id.* (internal quotation marks omitted).

## II.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372

F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat

Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).

Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded

allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000)

(internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While heightened fact pleading

is not required, "enough facts to state a claim to relief that is plausible on its face" must be

alleged. *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). At bottom, "[t]he

complaint must state enough facts to raise a reasonable expectation that discovery will reveal

evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech.

Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen

9

the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### III.    Motion for Sanctions

Pursuant to Federal Rule of Civil Procedure 11(b), an attorney or party "presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it" – certifies that "it is not being presented for any improper purpose, such as to harass . . . or needlessly increase the cost of litigation," that the claims "are warranted by existing law" or an objectively reasonable argument for a change in existing law, and "the factual contentions have evidentiary support." Rule 11 is "intended to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988). In the Third Circuit, conduct violates Rule 11 if is not "objectively reasonable under the circumstances." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) (internal quotation marks omitted).

A court may, pursuant to its inherent authority, impose sanctions against a party who abuses the judicial process. *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65,

73 (3d Cir. 1994); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-44 (1991).

## DISCUSSION

### I.   Motions for Judicial Notice

Total and Shell separately filed motions requesting that the Court take judicial notice of opinions and court filings from various related cases filed in the District of Colorado, the Southern District of New York, the Second Circuit, and the Tenth Circuit. (*See* D.I. 13; D.I. 19) Additionally, Shell requests that the Court take judicial notice of proceedings before the Supreme Court of New York, New York County as well as the Court of Queen's Bench of Alberta, Canada. (*See* D.I. 31) These motions are largely unopposed. (*See* D.I. 27; D.I. 28)[6]

In connection with a 12(b)(6) motion in which claim preclusion is invoked, a court may take judicial notice of public records. *See M & M Stone Co.*, 388 Fed. Appx. at 162. In taking judicial notice of a prior judicial opinion, a court may not use the opinion to establish the truth of the facts therein, but only to establish the existence of the opinion. *See id.*

Here, the Court finds it helpful in resolving the pending motions to consider the judicial opinions and related documents referenced by Defendants. Accordingly, the Court will grant Defendants' Motions to Take Judicial Notice and hereby takes judicial notice of the documents attached to these motions.

### II.   Motions for Leave to File Surreplies

Plaintiffs have requested leave to file surreply briefs in response to Defendants' Motions to Dismiss. (*See* D.I. 42; D.I. 43; D.I. 44) Total opposes Plaintiffs' request and argues that it

---

[6]Plaintiffs did not file a response to Shell's Supplemental Motion for Judicial Notice (D.I. 31), and, thus the Court presumes Plaintiffs also have no objection to the Court taking judicial notice of the documents submitted in conjunction with this motion.

11

would be unfair to permit Plaintiffs to file a surreply at this stage of the proceedings. (Tr. at 37; *see also* D.I. 45) Shell does not object to Plaintiffs' request. (D.I. 46)

The Court concludes that Plaintiffs' proposed surreplies will be helpful to the Court in resolving the pending motions. Accordingly, the Court will grant Plaintiffs' Motions for Leave to File Surreplies. Plaintiffs' proposed surreplies (D.I. 42, Ex. A; D.I. 43, Ex. A; D.I. 44, Ex. A) are hereby deemed filed.

## III. **Motion to Strike**

Plaintiffs request that the Court strike Shell's Rule 12(b)(6) motion (D.I. 17) – which was filed on the next business day after Shell filed its Rule 12(b)(2) motion – on the basis that successive motions to dismiss under Rule 12(b) are prohibited by Federal Rule of Civil Procedure 12(g)(2). (D.I. 26 at 1) *See generally Myers v. Am. Dental Ass'n.*, 695 F.2d 716, 720 (3d Cir. 1982) ("Rule 12(g) requires a party who raises a defense by motion prior to answer to raise all such possible defenses in a *single* motion.") (emphasis added). Shell responds that, when read together, Rule 12(g) and Rule 12(h) operate to exempt a Rule 12(b)(6) defense from the requirement that all 12(b) motions must be filed at the same time. (D.I. 24 at 3) Alternatively, Shell requests that, even if the Court deems its 12(b)(6) motion to be untimely, the Court exercise its discretion to decide the motion on its merits. (*Id.* at 4)

Rule 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule [i.e., Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2), in turn, provides that a defense of failure to state a claim upon which relief can be granted may be raised in any pleading allowed or ordered under Rule 7(a), or by motion for

12

judgment on the pleadings, or at trial. *See* Fed. R. Civ. P. 12(h)(2)(A)-(C).

This case does not present an occasion to decide whether Shell's motion should be dismissed as untimely because, under the circumstances, the Court will exercise its discretion and decide the issues raised in Shell's Rule 12(b)(6) motion even if it is considered untimely.[7] "The aim of Rule 12 is to afford an easy method for the presentation of defenses but at the same time prevent their use for purposes of delay." *Myers*, 695 F.2d at 720 (internal quotation marks omitted). In light of the fact that Shell filed its Rule 12(b)(6) motion one business day after the filing of its Rule 12(b)(2) motion, and that co-defendant Total had filed a motion to dismiss based on both Rule 12(b)(2) and 12(b)(6) on the day Shell filed its first motion, the Court finds no evidence of delay.[8] Accordingly, the Court will deny Plaintiffs' Motion to Strike.

## IV.    Rule 12(b)(2) Motions to Dismiss for Lack of Personal Jurisdiction

Both Defendants have moved to dismiss the Amended Complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). Total contends that this Court does not have personal jurisdiction over it because none of the alleged conduct that forms the basis of Plaintiffs' claims occurred in Delaware, Total does not engage in any persistent course of conduct in Delaware, and Plaintiffs have not identified any specific actions by which indirect

---

[7]Other courts have exercised their discretion to decide a Rule 12(b)(6) motion on its merits even when filed after another Rule 12(b) motion. *See, e.g.*, *Tatum v. R.J. Reynolds Tobacco Co.*, 2007 WL 1612580, at *6 (M.D.N.C. May 31, 2007) (citing cases); *In re Westinghouse Secs. Litig.*, 1998 WL 119554, at *6 (W.D. Pa. Mar. 12, 1998) (same).

[8]Plaintiffs' concerns about page-limits for briefing under the local rules (*see* D.I. 40 at 3) are misplaced, as Plaintiffs were able to file responsive briefing and surreply briefing related to Shell's Rule 12(b)(6) motion. Shell did not gain an unfair advantage by being able to file a subsequent Rule 12(b) motion.

Delaware subsidiaries are the alter ego of Total. (D.I. 12 at 3)[9] Similarly, Shell contends that this Court does not have personal jurisdiction over it because the litigation has no connection to Delaware, Shell does not have a substantial, systemic, and continuous presence in Delaware, and Plaintiffs have not met their burden to establish personal jurisdiction under the alter ego or agency theories. (D.I. 16 at 2)

In response, Plaintiffs argue that this Court has general personal jurisdiction over Total and Shell. With respect to Total, Plaintiffs argue that personal jurisdiction is present because Total, "through its Delaware subsidiaries . . . regularly does or solicits business in Delaware and engages in a persistent course of conduct in Delaware." (D.I. 23 at 2-3) With respect to Shell, Plaintiffs argue general personal jurisdiction is established both because Shell has utilized the benefits of Delaware corporate law to form, merge, or acquire Delaware subsidiaries, "which they have used to generate billions of dollars of earnings," and because Shell's wholly-owned Delaware subsidiaries "serve as their agents in Delaware." (D.I. 24 at 1-2) In the alternative, Plaintiffs ask that if the Court concludes they have failed to state a prima facie case of personal jurisdiction, the Court should still deny the motions to dismiss and grant Plaintiffs the opportunity to take jurisdictional discovery. (D.I. 23 at 18-20; D.I. 24 at 2-3, 19-20)

Given that all Defendants have also moved to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), the Court inquired into the parties' views as to whether the Court had to determine if it had personal jurisdiction before it could decide the 12(b)(6) motions. All parties

---

[9]Total raised substantially similar arguments in conjunction with a motion to dismiss for lack of personal jurisdiction in a related case filed by Plaintiffs against Total in this District, C.A. No. 10-1093-LPS. In the related case, the Court, by Memorandum Order issued the same date as this Memorandum Opinion in the instant action, has granted Total's motion to dismiss for lack of personal jurisdiction. (*See* C.A. No. 10-1093-LPS D.I. 26)

14

responded that it would be acceptable to them for the Court to presume it has jurisdiction over all

Defendants and proceed to decide the 12(b)(6) motions. (*See* Tr. at 22-23, 34-35, 59) This

approach would be consistent with that taken by the District Court in the New York Actions. *See*

*Pricaspian*, 2009 WL 4163513, at *7 ("Because this Court finds that the Plaintiff's claims are

barred by the prior litigation in Colorado, it need not wade into the nuanced world of personal

jurisdiction.").

The Supreme Court has held that "a federal court *generally* may not rule on the merits of

a case without first determining that it has jurisdiction over the category of claim in suit (subject-

matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia*

*Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (emphasis added). Here, there is no question

that the Court has subject matter jurisdiction (at least pursuant to 28 U.S.C. § 1332) or that

Plaintiffs have standing to sue.[10] There is, however, obviously a dispute as to whether this Court

has personal jurisdiction. Unfortunately, resolution of this issue is substantially more

complicated than resolution of the issue as to whether Plaintiffs have even stated a claim on

which relief may be granted. This is because, among other reasons, Plaintiffs would need to be

permitted to take jurisdictional discovery in order to hope to meet their burden on personal

jurisdiction. By contrast, for reasons that will be discussed below, the 12(b)(6) issues are

relatively easier to resolve, as the Amended Complaint asserts claims on which Plaintiffs plainly

---

[10]In this regard, the instant case is distinguishable from cases in which courts have found it necessary to address personal jurisdiction prior to reaching the merits. *See, e.g., Steel Co. v. Citizens for Better Env't.*, 523 U.S. 83, 94-95 (1998) (rejecting practice of assuming jurisdiction where there is question as to Article III standing); *Tagayun v. Lever & Stolzenberg*, 239 Fed. Appx. 708, 709-10 (3d Cir. Mar. 15, 2007) (determining court must assess personal jurisdiction before reaching merits where there was question over whether court had subject matter jurisdiction).

cannot be granted relief. Indeed, the Court is granting Defendants' Motions for Sanctions due to the filing of these claims.

Under these circumstances, the Court concludes that the most appropriate course of action is to proceed to review the issues presented in Defendants' 12(b)(6) motions to dismiss. Before the Court could make a determination on the merits as to personal jurisdiction, it would be necessary first to permit Plaintiffs to take jurisdictional discovery, as the Court concludes that Plaintiffs have failed to make out a prima facie case of personal jurisdiction at this time. But, even if this discovery – which could take some substantial time to complete, and would impose financial and other burdens on all parties, and could also generate discovery disputes that would require judicial attention – proved that this Court has personal jurisdiction over Defendants, the Court would still dismiss this case, for reasons to be discussed in connection with the 12(b)(6) motions. Therefore, the Court is unwilling to permit the jurisdictional discovery. *See generally Mass. Sch. of Law at Andover*, 107 F.3d at 1042 ("[G]enerally . . . jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'"); *see also generally* Fed. R. Civ. P. 1 (stating Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). However, without the evidence that might be acquired through discovery, Plaintiffs are unable to meet their burden to establish personal jurisdiction. Accordingly, under these unusual circumstances, the Court will grant Defendants' motions to dismiss for lack of personal jurisdiction.

Below, the Court proceeds to review the 12(b)(6) motions, explaining that they are meritorious and that Plaintiffs have failed to state a claim on which relief may be granted. It is for these reasons that the Court has concluded, as stated above, that it is appropriate to deny

Plaintiffs' request for jurisdictional discovery, resulting in a situation in which Plaintiffs have failed to meet their burden with respect to personal jurisdiction.

## V.   Rule 12(b)(6) Motion to Dismiss

Defendants seek to dismiss the Amended Complaint based on statute of limitations and *res judicata* grounds. (*See* D.I. 12; D.I. 18)  Defendants also seek to dismiss Plaintiffs' due process claim on the ground that it fails to state a claim upon which relief can be granted.  The Court addresses each argument in turn.

### A.    Applicable Statute of Limitations

#### 1.    Delaware's Borrowing Statute

The statute of limitations issue raised in Defendants' 12(b)(6) motions requires that the Court first determine which state's law to apply.  "[A] federal court, sitting in diversity, follows the forum's choice of law rules to determine the applicable statute of limitations." *Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985).  Thus, the Court looks to Delaware law for the applicable choice of law rules.

Traditionally, statutes of limitations are governed by forum law; however, Delaware's borrowing statute has modified the traditional rule. *See Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 494 (3d Cir. 1992).  When a non-resident plaintiff files an action in Delaware for claims arising outside of the state, the Delaware borrowing statute applies. *See id.*; *see also* 10 DEL. C. § 8121.  The Delaware borrowing statute provides:

> Where a cause of action arises outside of this state, an action
> cannot be brought in a court of this State to enforce such a cause of
> action after the expiration of whichever is shorter, the time limited
> by the law of this State, or the time limited by the law of the state
> or country where the cause of action arose, for bringing an action
> upon such cause of action.

10 DEL. C. § 8121.

### 2.    Applicability of the Borrowing Statute

Plaintiffs argue that the Court should not apply Delaware's borrowing statue literally.

Plaintiffs contend that the borrowing statute "only applies to prevent litigants from bringing

actions in Delaware *solely* to take advantage of a longer statute of limitations in Delaware than in

the more appropriate forum for the lawsuit." (D.I. 23 at 8) (emphasis in original)  According to

Plaintiffs, because Delaware's statute of limitations is not longer than Kazakhstan's limitations

period, the borrowing statute does not apply.

Plaintiffs rely on the Delaware Supreme Court's decision in *Saudi Basic Indus. Corp. v.*

*Mobil Yanbu Petrochemical Co.*, 866 A.2d 1 (Del. 2005).  In *Saudi Basic*, the plaintiff

strategically chose Delaware as its forum with the knowledge that Delaware's statute of

limitations would bar the defendant's counterclaim. *See id.* at 17.  The defendant argued that the

shorter Delaware statute of limitations should not be applied because its counterclaim was still

valid in the state where the claim had arisen. *See id.*  The Court agreed with the defendant,

concluding that a "literal construction of the borrowing statute . . . would subvert the statute's

underlying purpose." *Id.* at 16.

Delaware's borrowing statute is "designed to prevent shopping for the most favorable

forum." *Id.*  In the instant case, unlike *Saudi Basic*, a literal construction of the borrowing statue

would not subvert the statute's underlying purpose. To the contrary, the application of the borrowing statute in the instant case falls squarely within the statute's purpose.

Delaware is the third jurisdiction in which Plaintiffs have brought claims seeking to recover from Defendants for alleged unjust enrichment arising out of Defendants' interest in the GKOF. Plaintiffs assert their claims are not subject to any statute of limitations period – although two other federal district courts have found their claims to be time-barred. Under the circumstances, the Court is not convinced by Plaintiffs' protestations that they are not engaged in forum shopping. Accordingly, the Court will apply the Delaware borrowing statute.

Under the Delaware borrowing statute, the Court must apply the shorter of the Delaware statute of limitations and the statue of limitations of the place where Plaintiffs' causes of action accrued. Thus, the Court will next address where Plaintiffs' causes of action accrued.

### 3. Most Significant Relationship Test

Delaware conflict of law rules direct that the Court determine where Plaintiffs' claims arose by application of the "most significant relationship" test, as set forth in the *Restatement (Second) Conflict of Laws* ("*Restatement*") §§ 145 and 188 (1971). *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). Under section 188, the rights and duties of the parties are determined by the local law of the state with the most significant relationship to the transaction and to the parties, based on the following considerations: a) the place of contracting, b) the place of negotiation of the contract, c) the place of performance, d) the location of the subject matter of the contract, and e) the domicile, residence, or place of incorporation and place of business of the parties. *See Restatement* § 188. When deciding a choice of law issue, "Delaware courts place considerable emphasis on the place where the injury occurred and the place where the conduct

19

causing the injury occurred." *Travelers*, 594 A.2d at 47.

Plaintiffs contend that the dispute is most significantly related to Kazakhstan.
Specifically, Plaintiffs argue that Kazakhstan is both the place of injury and the place where the
conduct causing the injury occurred. In Plaintiffs' view, Total's and Shell's unlawful conduct –
participation in the $175 million bribery scheme – occurred in Kazakhstan. (D.I. 23 at 11)
Plaintiffs further assert that "[t]he concession between the Kazakh government and defendant's
consortium provides substantial benefits to the Kazakh government and its people," that
"Kazakhstan has the most significant relationship to the GKOF, and to the alleged conduct
involving the consortium to develop the GKOF," and that "Kazakhstan is the state 'most deeply
affected' by the parties' dispute." (D.I. 25 at 6-7)

The Court is not persuaded by Plaintiffs' arguments. Plaintiff Grynberg is a resident of
Colorado; Plaintiff PDC is incorporated in Texas and headquartered in Colorado. (D.I. 30 at 5)
A corporation sustains injury where it is incorporated and where it has offices. *See Pricaspian*,
2009 WL 1564110, at *8. The sole meeting between Total and Grynberg took place in Colorado.
(D.I. 30 at 5) In PDC's New York Action against Total, the Court found that "Colorado is the
place where Plaintiff sustained its alleged injury." *Pricaspian*, 397 Fed. Appx. at 676. Likewise,
in PDC's New York Action against Shell, the Court concluded that PDC's causes of action
accrued in Colorado. *See Pricaspian*, 2009 WL 1564110, at *8. The Court concludes that
Colorado has the most significant relationship to the transaction at issue and is the place where
the causes of action asserted in the instant case accrued.

Therefore, under the borrowing statute, the Court must apply the shorter of Colorado's or
Delaware's statute of limitations. Both states' statute of limitations is three years. *See*

20

*Strerenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011) (stating there is "three-year statute of

limitations for contract actions"); *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999) ("Under

Delaware law, a three year statute of limitations applies to claims for breach of contract or breach

of fiduciary duty.").

Accordingly, the causes of action asserted in the Amended Complaint are barred if the

conduct giving rise to them occurred three years prior to the date of the filing of the Original

Complaint. As discussed below, due to application of the doctrine of *res judicata*, Plaintiffs are

barred from contesting the fact that the three year statute of limitations bars the claims asserted in

the instant action.

### B.  *Res Judicata*

*Res judicata*, or claim preclusion, prevents parties from "contesting matters that they have

had a full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153-54

(1979). Under Colorado law,[11] claim preclusion applies "where four elements exist: (1) finality

of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4)

identity or privity between parties to the actions." *Gallegos v. Colo. Ground Water Comm'n*, 147

P.3d 20, 32 (Colo. 2006). In accordance with the principles of *res judiciata,* the claims in the

instant action are barred by the judgments in the Colorado actions.

### 1.  **Finality of Judgment**

The Colorado judgments in favor of Shell and Total are final judgments. *See Grynberg*,

129 S. Ct. 1585 (denying petition for writ of certiorari). Plaintiffs argue that under Colorado law,

---

[11]As discussed above, Colorado has the most significant relationship to the instant case. Thus, under Delaware choice of law rules, the Court must apply Colorado law to decide the issues in the 12(b)(6) motions.

"a ruling on limitations grounds is not a ruling on the merits and thus has no claim preclusive effect." (D.I. 23 at 6) Plaintiffs' argument fails, however, because, under Colorado law, a ruling on the merits is not a necessary element of claim preclusion. *See Gallegos*, 147 P.3d at 32; *see also Nwosun v. Gen. Mills Rest., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) ("A judgment for failure to comply with the statute of limitations is a judgment on the merits."). Also, in the New York Actions, the Southern District of New York found that the judgments in the Colorado Actions met the finality requirement for *res judicata* purposes. *See Pricaspian*, 2009 WL 4163513, at *5; *Pricaspian,* 2009 WL 1564110, at *8. This Court agrees.

## 2. **Identity of Subject Matter**

The Colorado, New York, and Delaware complaints are all premised on Grynberg's interest in the GKOF and Defendants' misuse of Grynberg's proprietary information. All three complaints allege that Grynberg obtained secret information through his personal relationships with Russian and Kazakh officials, that Grynberg and Defendants entered into agreements regarding the exploration of the GKOF, and that Grynberg was later denied his rightful share of his interest.

The Shell Defendants summarized the similarities of the complaints brought against them in Colorado, New York, and Delaware as follows:

> All three Complaints allege that "[o]n or about July 17, 1990, Grynberg advised Shell that Grynberg had been assured in its discussions with [top] Kazakhstan officials [. . .] that the Republic of Kazakhstan was interested in [. . .] participating as a grantor of oil and natural gas [. . .] rights to, and as a partner with, a group of western oil companies to be organized by Grynberg." Colo. Compl. ¶ 5; N.Y. Compl. ¶ 10; Del. Compl., D.I. 10, ¶ 52. All three Complaints allege a single meeting with Messrs. De Heer and Lovelock in Colorado, where de Heer and Lovelock were presented

22

with "confidential maps" and "geologic, seismic, and economic data." Colo. Compl. ¶ 5; N.Y. Compl. ¶ 10; Del. Compl., D.I. 10, ¶ 53. The data reviewed at this meeting came from Mr. Grynberg's access to secret (or "top-secret") Soviet seismic data in Moscow in late 1989. Colo. Compl. ¶ 17; N.Y. Compl. ¶ 9; Del. Compl., D.I. 10, ¶ 38. In Colorado and New York, this information "persuaded" de Heer and Lovelock "on behalf of Shell, to enter into an agreement in principle with Grynberg related to the development of a [highly] profitable and potentially gigantic oil and natural gas industry in the AMI in Kazakhstan." Colo. Compl. ¶ 5; N.Y. Compl. ¶ 10. Plaintiffs now characterize this agreement-in-principle as a "joint venture," even after they dropped their claim for breach of fiduciary duty. *See* Del. Compl., D.I. 10, ¶ 53.

(D.I. 18 at 13)

The subject matter in the complaints filed in the Colorado Actions and the complaint filed in the instant action against Total are also identical. The complaints all recite that in 1989-90 Grynberg made contacts with Kazakh officials and was given access to secret Russian seismic data, to which he applied his skills to develop valuable, confidential information, and from which he identified the area that became known as Kashagan.

### 3.   Identity of Claims

Colorado applies a transactional approach in determining whether claims share identity. *See Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005). In determining whether claims arise from the same transaction, the Court must look to pragmatic considerations, such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Camus v. State Farm Mut. Auto Ins. Co.*, 151 P.3d 678, 680 (Colo. App. 2006). "[C]laim preclusion bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied to the same injury." *Argus Real*

*Estate*, 109 P.3d at 609. Attaching a new label or proposing a new legal theory does not distinguish a claim seeking the same relief for the same injury. *Id.*

Plaintiffs argue that the claims they press in the instant case did not accrue until November 2010, "when the District Court presiding over Giffen's prosecution disclosed in open court for the first time that secret United States government documents confirmed Giffen's public authority defense." (D.I. 25 at 13) Plaintiffs assert that their claims, based on "criminal bribes of top Kazakh government officials," were unknown and, thus, did not exist the time of the Colorado and New York rulings. *Id.* Plaintiffs cite *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 328-29 (1955), for the proposition that claim preclusion does not apply to claims that did not exist, or were unknown, at the time of the prior action.

The Court disagrees with Plaintiffs and finds, instead, that Plaintiffs' claims did exist as early as during the pendency of the Colorado Actions. The information disclosed with respect to Giffen did not create a new claim. To the contrary, Plaintiffs' claims are barred because they are tied to the same injury and could have been brought at the time of the Colorado Actions.

Although Plaintiffs did not raise the current bribery and conspiracy allegations in the Colorado or New York Actions, the injury and remedy sought is identical in the complaints filed in all three Districts. The injury of which Plaintiffs complain is that Total and Shell did not include Grynberg in the Consortium and did not share their rights under the PSA with Grynberg or compensate him for use of his proprietary information and services. As for remedy, Plaintiffs seek a twenty percent interest in Total's and Shell's pro rata share in the GKOF – precisely the relief sought in the Colorado and New York Actions. (*Compare, e.g.*, D.I. 10 at 19-21 *with* D.I. 12, Ex. 9 at 18-19)

24

The claims in the instant action are the same as those asserted in the Colorado and New York Actions: they are based not just on facts that are related in time, space, and origin, but on precisely the same factual narrative. Therefore, the Court finds that the claims asserted in Colorado, New York, and the instant case arise from the same transaction and are identical claims for purposes of *res judicata*.

### 4.      **Identity of Parties**

Colorado law requires "that the parties be the same as those in the first action or persons in privity with them." *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999). Plaintiffs do not dispute that the parties in the Colorado Actions and the instant action share identity.

Total was a defendant in one of Grynberg's Colorado Actions. *See Grynberg*, 2006 WL 1517731. Grynberg brought the other Colorado Action against the same five Shell entities named in the instant suit. However, the claims against Royal Dutch Shell, Shell Transport, and Shell Petroleum were dismissed for lack of personal jurisdiction. The Colorado court entered summary judgment in favor of Shell Exploration, B.V. and Shell International Exploration and Production B.V. *See Grynberg*, 433 F. Supp. 2d at 1230. The Shell entities dismissed for lack of personal jurisdiction in Colorado were named in PDC's New York complaint. The New York court found that Royal Dutch, Shell Transport, and Shell Petroleum were in privity with Shell Exploration and Shell International. Therefore, all five Shell defendants named in the instant complaint were either granted summary judgment in the Colorado Action or were in privity with the entities in the Colorado Action that were granted summary judgment.

Accordingly, the Court finds that the four elements of claim preclusion are satisfied and Plaintiffs' claims must be dismissed.

## C.    Due Process

In addition to dismissal on *res judicata* grounds, Count II of the Amended Complaint also

must be dismissed because it fails to state a claim upon which relief can be granted. In Count II,

Plaintiffs claim that Total and Shell violated Grynberg's procedural and substantive due process

rights under the Fifth Amendment by acting in concert with James Giffen, an agent of the United

States government, to bribe Kazakh officials and deprive Grynberg of his property. (*See* D.I. 10

¶¶ 74-81) Plaintiffs argue that Defendants' participation in an integrated alliance with a federal

agent makes them federal actors. (*See id.*)

A limited private right of action exists for damages against federal officials alleged to

have violated a citizen's constitutional rights. *See Bivens v. Six Unknown Fed. Narcotics Agents*,

403 U.S. 388 (1971). In *Malesko v. Correctional Servs. Corp.*, 534 U.S. 61, 66 (2001), the

Supreme Court addressed whether the damages action first recognized in *Bivens* "should be

extended to allow recovery against a private corporation operating a halfway house under

contract with the Bureau of Prisons." The *Malesko* Court held that a *Bivens* action could not be

brought against such a defendant. *Id.*

The parties disagree over the scope of *Malesko*. Defendants contend that *Malesko* stands

for the broad proposition that no due process cause of action exists for constitutional violations

perpetrated by private corporations. (D.I. 18 at 20) Plaintiffs counter that *Malesko*'s holding

only applies to the narrow category of defendants that the Court addressed in *Malesko*: private

prison corporations. (D.I. 44, Ex. A at 4) According to Plaintiffs, the "comprehensive scheme of

administrative remedies" available to prison inmates acted as a "special factor counseling

hesitation" in the Court's decision to not extend the *Bivens* remedy. (D.I. 25 at 17) Here,

26

Plaintiffs argue, there is no analogous remedy "for addressing the Shell Defendants' violations of plaintiffs' due process rights." (*Id.*)

Plaintiffs' narrow reading of *Malesko* is incorrect. The Supreme Court stated in *Malesko*: "The Courts of Appeals have divided on whether *FDIC v. Meyer*, 510 U.S. 471 (1994), forecloses the extension of *Bivens* to private entities. . . . We hold today that it does." 534 U.S. at 66 n.2. Likewise, the Third Circuit, citing *Malesko*, has held that a plaintiff could not bring a *Bivens* action against a corporate defendant because "the Supreme Court has explicitly refused to extend *Bivens* actions to private corporations." *Bob v. Kuo*, 2010 WL 2825644, at *2 (3d Cir. July 20, 2010); *see also Castaneda v. United States*, 546 F.3d 682, 701 n.25 (9th Cir. 2008) (explaining that *Bivens* relief is precluded in "a lawsuit against . . . a private corporation").

Total is a corporation organized under the laws of France. The Shell Defendants are corporations organized under the laws of the Netherlands and the United Kingdom. Based on *Malesko*, Plaintiffs may not bring a *Bivens* action against Total or Shell. Therefore, Plaintiffs have failed to state a claim on which relief can be granted in Count II of the Amended Complaint and Plaintiffs' due process claim must be dismissed.

## VI.   Motions for Sanctions

### A.   Timeliness of Total's Motion

Plaintiffs argue that Total's Motion for Sanctions should be denied as procedurally improper because (1) Total did not wait the required twenty-one days to file the motion after serving Plaintiffs with its brief in support of sanctions,[12] and (2) Total did not file its motion

---

[12]Total also argues that the brief filed with the Court was not identical to the brief served on Plaintiffs. (D.I. 60 at 7) However, having examined the briefs, the Court concludes that the differences were not material; the changes were stylistic and did not alter the substance of the

promptly but instead served its motion on Plaintiffs 140 days after Plaintiffs had filed their Amended Complaint.  (D.I. 60 at 3 ¶ 1)

Plaintiffs' arguments are unpersuasive.  First, the fact that Total did not wait twenty-one days to file its sanctions motion with the Court after serving it on Plaintiffs does not warrant dismissal of the motion.  The purpose of the twenty-one day requirement of Rule 11 is to give a party time to "withdraw[ ] or appropriately correct[ ]" the "challenged paper, claim, defense, contention, or denial."  Fed. R. Civ. P. 11(c)(2).  The Third Circuit has stated that failure to comply with the twenty-one day notice requirement is not a bar to consideration of the merits of a motion for sanctions when the party opposing sanctions states it would not have withdrawn the allegedly sanctionable pleading.  *See Zuk v. E. Pa. Psychiatric Institute*, 103 F.3d 294, 299 n.3 (3d Cir. 1997) (stating that Court "need not address" non-moving party's contention that it did not receive requisite twenty-one days notice where non-moving party "acknowledged that he would not have withdrawn the complaint even if he had been given the full 21-day safe harbor").  Here, Plaintiffs' counsel stated that Plaintiffs would not withdraw the Amended Complaint that is the basis for the sanctions motion.  (*See* D.I. 57, Ex. 2 ("[W]e will not withdraw our clients' claims in response to your frivolous motion for sanctions."))  Thus, Total's failure to fully comply with Rule 11's safe harbor period does not warrant dismissing Total's sanctions motion.

Second, although the Rule 11 Advisory Committee notes state that "*[o]rdinarily*, the motion should be served promptly after the inappropriate paper is filed," no specific time requirement is imposed.  Fed. R. Civ. P. 11 adv. comm. notes (1993) (emphasis added).  In light of the discussions among Total, Shell, and Plaintiffs in an effort to resolve the sanctions issue

_____

motion.

prior to bringing it to the Court's attention (*see* D.I. 62 ¶ 6), there is no evidence that Total unreasonably delayed filing its sanctions motion.

### B.    Sanctionable Conduct

#### 1.    Plaintiffs' Counsel

Defendants contend that Plaintiffs' counsel's refusal to withdraw the Original Complaint and decision to file an unsupported Amended Complaint violates three subsections of Rule 11: (b)(1) (pleading presented for improper purpose), (b)(2) (claims unwarranted and frivolous), and (b)(3) (lack of evidentiary support for factual contentions). The Court concludes that both the Original and the Amended Complaint were unwarranted and frivolous and, thus, filed in violation of Rule 11(b)(2). Accordingly, the Court finds that Rule 11 sanctions should be imposed on Plaintiffs' counsel.

Plaintiffs' counsel's conduct in refusing to withdraw the Original Complaint and in filing the Amended Complaint was not objectively reasonable under the circumstances. By signing the Complaints, Plaintiffs' counsel certified that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Yet there is no evidence or credible argument supporting the asserted claims. The Original and Amended Complaints in the instant case are based on the same factual narrative as the Colorado and New York Actions. Indeed, Counts I through V of the Original Complaint and Counts I and II in the Amended Complaint seek the same remedy that was sought in the previous actions: "the cash value of a 20% carried interest in [Defendants'] pro rata share in the GKOF." (Compare D.I. 1 ¶¶ 69(iii), 74(i), 83(i), 91(i) *and* D.I. 10 ¶¶ 73(i), 81(i) *with* D.I. 12 ¶¶ 38-42 *and* D.I. 21, Ex. 11

29

¶¶ 15-25)

An attorney acting reasonably would have realized that merely asserting a new legal theory – Kazakh statutory law and due process violations – would not avoid the estoppel and limitations bars of the Colorado and New York Actions. Because the Colorado court determined that Grynberg's claim accrued no later than 1997, Plaintiffs are collaterally estopped from re-litigating this determination. Further, regardless of the legal theory asserted, Plaintiffs' Original and Amended Complaints in the instant case assert claims that arise out of the same facts and seek the same relief as was sought in the prior actions; accordingly, these claims are barred by the doctrine of *res judicata*. *See Arizona v. California*, 530 U.S. 392, 424 (2000) (Rehnquist, J., concurring) ("Res judicata not only bars relitigation of claims previously litigated, but also precludes claims that *could have been brought* in earlier proceedings.") (emphasis added); *see also In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). Based on the facts pled in the Original and Amended Complaints, it is evident to the Court – and should have been evident to counsel – that the claims asserted in the instant action could have (and should have) been brought in the Colorado Actions.

Further, an attorney acting reasonably would have realized that, even to the extent the claims being asserted now are based on "new" evidence about bribery, these claims would be barred by the applicable statute of limitations. Grynberg's sworn testimony demonstrates that he knew, during the pendency of the Colorado Actions, the essential facts upon which the bribery allegations are based. (*See* D.I. 66, Ex. D at 47-48) This raises an "obvious" limitations issue which should have deterred counsel from proceeding with these claims. *See Zuk*, 103 F.3d at 299 (sanctions imposed where adequate investigation would have avoided "obvious" limitations

30

issue).

In sum, the Court concludes that Plaintiffs' counsel did not have a reasonable basis to believe that the claims asserted in Plaintiffs' Original and Amended Complaints were warranted by existing law – or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law – because they assert claims that are plainly barred by *res judicata* and the applicable statute of limitations. Thus, the Court will impose sanctions on Plaintiffs' counsel for violation of Rule 11(b)(2).[13]

### 2.   **Plaintiffs**

"[A] district court has *inherent* authority to impose sanctions upon those who . . . abuse the judicial process." *Republic of Philippines*, 43 F.3d at 73; *see also Chambers*, 501 U.S. at 42-44. In order to impose sanctions under its inherent powers, "the court must consider the conduct at issue and explain why the conduct warrants sanction." *Republic of Philippines*, 43 F.3d at 74.

Here, Plaintiffs were personally responsible for seeking to file another lawsuit. Although it was Plaintiffs' counsel who ultimately filed the offending Original Complaint and Amended Complaint with the Court, it is evident that Plaintiffs directed their counsel to file their claims despite knowing that such litigation had already been dismissed by two other district courts (dismissals that were upheld on appeal). Thus, the Court concludes that Plaintiffs abused the judicial process and acted in bad faith in filing the instant lawsuit. The mere fact that Plaintiffs' counsel aided in the wrongdoing does not relieve Plaintiffs of responsibility as well. *See id.* ("[A] client cannot always avoid the consequences of the acts or omissions of its counsel.").

---

[13]Based on the Court's finding that sanctions are appropriate pursuant to Rule 11(b)(2), the Court will not address Total's argument that sanctions are also appropriate pursuant to 28 U.S.C. § 1927 (*see* D.I. 57 at 9-10).

Grynberg and PDC were parties to the Colorado and New York Actions. Although the Court cannot expect a non-attorney to have a full understanding of the law, here the district courts in New York and Colorado informed Plaintiffs in their rulings that any claims are barred if the claims could or should have been brought in an earlier case based on the same facts. *See, e.g.*, *Pricaspian*, 2009 WL 4163513, at *5; *Pricaspian*, 2009 WL 1564110, at *6. Further, these courts informed Plaintiffs that, in determining whether new claims arise out of the same facts, the focus is on the injury alleged. Moreover, Mr. Grynberg is an experienced litigant who has been involved in numerous lawsuits. (*See* D.I. 66 at 17 n.31 (stating that, as of October 15, 2011, Grynberg or his companies have been plaintiffs in at least 199 federal court cases); *see also id.* at 1 n.1 (listing federal court cases involving Grynberg's claim to share of profits related to development of oil in Caspian Sea)) Based on Grynberg's experience with previous litigation and his decision to bring this new lawsuit despite the holdings of the Colorado and New York courts, the Court concludes that Grynberg acted in bad faith.[14] Absent imposition of sanctions, Plaintiffs will likely attempt to file this lawsuit in yet another forum, wasting the judicial resources of another federal court.

### 3. Appropriate Sanctions

Having determined that sanctions are warranted in this case, the Court will now turn to addressing the appropriate sanctions to impose against Plaintiffs and their counsel. As will be

---

[14]The Court's conclusion that Grynberg acted in bad faith is supported by the fact that he has a history of filing lawsuits knowing that they are frivolous and foreclosed by previous holdings. *See L&R Exploration Venture v. Grynberg*, 927 N.Y.S.2d 816, at *8 (N.Y. Sup. Ct. Apr. 19, 2011) (finding Grynberg in contempt of court for commencing action relating to same underlying conduct already foreclosed by court order); *see also* 2009 ABQB 452 (Alberta Ct. of Queens Bench, July 24, 2009) (holding Grynberg in contempt for filing lawsuits in violation of court's injunction order).

32

discussed below, the Court concludes that attorney's fees and costs are an appropriate sanction. By separate Order the Court will outline the procedure for submitting fee requests, which will be reviewed at a later time in order to determine the appropriate amount of attorney's fees and costs to be awarded and the proportion of those fees and costs to be paid by Plaintiffs and Plaintiffs' counsel.

### a.    Plaintiffs' Counsel

As discussed above, the Court has determined that Plaintiffs' counsel violated Rule 11(b)(2) by filing a pleading that was not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law. Thus, the Court can impose an appropriate sanction against Plaintiffs' attorney and his law firm,[15] including "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

The goal of sanctions is deterrence, and a "district court's choice of deterrent is appropriate when it is the minimum that will serve to adequately deter the undesirable behavior." *Zuk*, 103 F.3d at 301. In determining appropriate sanctions, a district court should consider the following factors: (1) whether the attorney has a history of this sort of behavior, (2) the defendant's need for compensation, (3) the degree of frivolousness, and (4) the wilfulness of the violation. *Id.*

Here, Plaintiffs' counsel have no history of this sort of behavior, and the instant case appears to be an isolated incident. Defendants have a significant need for compensation, as their

---

[15]"Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

attorneys have had to spend considerable time responding to the frivolous Amended Complaint, briefing multiple motions, preparing for and appearing at a lengthy oral argument, and engaging in preliminary discovery. The need for compensation is even more significant in light of the fact that this is the fifth court in which Defendants have had to defend against allegations arising out of the same conduct – even after having prevailed (including on appeal) in those prior actions. As the court in one of the New York Actions summarized, this case is merely "one of Jack Grynberg's recent forays into federal court challenging the development of an oil field under the Caspian Sea in western Kazakhstan." *Pricaspian*, 2009 WL 4163513, at *1 (citing eight separate cases brought in various locations by Grynberg and his affiliates).

The degree of frivolousness in this case is significant. Plaintiffs' counsel filed the instant case being fully aware of the Colorado and New York Actions (*see* D.I. 60 at 14); they should also have been aware of the preclusive effect on the claims asserted in the instant action. Plaintiffs' counsel's assertion that Kazakh law applies does not alter the Court's finding of frivolousness, as Plaintiffs have failed to advance any legitimate argument explaining why a claim under Kazakh law could not have been brought in the prior actions, nor any credible argument as to why the Kazakh three-year statute of limitations does not bar the present action.

Finally, Plaintiffs' counsel's conduct was willful. Counsel was informed by Defendants that their conduct was likely sanctionable but they nonetheless refused to withdraw the Original Complaint, instead choosing to assert a non-meritorious argument regarding Kazakh law. Accordingly, the Court finds that an appropriate sanction to deter future filing of frivolous lawsuits is that Plaintiffs' counsel pay Defendants' reasonable attorney's fees and costs arising out of this litigation.

### b.  Plaintiffs

A district court has "discretion . . . to fashion an appropriate sanction for conduct which abuses the judicial process" and "must also ensure that the sanction is tailored to address the harm identified." *Republic of Philippines*, 43 F.3d at 74. In determining the appropriate sanction, the Court must consider "the extent of the party's personal responsibility" as well as "the magnitude of the wrongdoing." *Id.* Further, "the court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate" and "why it has chosen any particular sanction from the range of alternatives it has identified." *Id.*

The Court has already discussed why Plaintiffs' conduct warrants sanction and the fact that Plaintiffs were personally responsible for bringing the instant lawsuit. Filing a frivolous lawsuit and wasting the judicial resources of this Court, in light of the judicial resources already expended by two other District Courts and two Courts of Appeals, is of significant magnitude.

The Court can impose a variety of sanctions on a litigant who it finds has abused the judicial process. The Court could impose a monetary sanction, such as a fine or the imposition of cost-shifting measures requiring the litigant to pay the costs and attorneys' fees of the other parties.[16] *See Chambers*, 501 U.S. at 45 ("[A]ssesment of attorney's fees is undoubtedly within a court's inherent power as well."); *Prosser v. Prosser*, 186 F.3d 403, 407 (3d Cir. 1999) (stating "a court may impose a fine under its inherent power"). Additionally, the Court may enjoin a

---

[16]In order to impose the sanction of requiring a party to pay the other side's attorney's fees, the Court must make a finding of bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *In re Schafer Salt Recovery, Inc.*, 542 F.3d 90, 97 n.3 (3d Cir. 2008). As discussed above, the Court has determined that Plaintiffs acted in bad faith in bringing this lawsuit.

party from filing pleadings where the pleadings raise issues identical or similar to those that have already been adjudicated. *See* 28 U.S.C. § 1651; *Matter of Packer Ave. Assoc.*, 884 F.2d 745, 747 (3d Cir. 1989).

Here, the Court concludes that requiring Plaintiffs to pay a portion of Defendants' attorney's fees and costs should sufficiently deter Plaintiffs from bringing further frivolous litigation. The Court is hopeful that monetary sanctions (which are likely to be quite large) will deter Plaintiffs from filing lawsuits like this one in the future.

The extreme sanction of prohibiting Plaintiffs from filing further litigation related to this case is not warranted. As the Third Circuit has noted, "[a]ll of the courts that have considered whether an injunction restricting a litigant's future litigation may be issued have emphasized that such an injunction should be narrowly tailored and rarely issued." *Matter of Packer Ave. Assocs.*, 884 F.2d at 748; *see also Adul-Akbar Watson*, 901 F.2d 329, 332 (3d Cir. 1990) (noting that while "the district court [has] the power to issue an injunction to restrict the filing of meritless pleadings, it is an extreme remedy which must be narrowly tailored and sparingly used") (internal quotation marks omitted).

## CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motions to Take Judicial Notice, grant Plaintiffs' Motions for Leave to File Surreplies, and deny Plaintiffs' Motion to Strike. Additionally, the Court will grant Defendants' Motions to Dismiss based on lack of

36

personal jurisdiction under Rule 12(b)(2) and deny as moot their Motions to Dismiss based on Rule 12(b)(6). Finally, the Court will grant Defendants' Motions for Sanctions. The appropriate amount of sanctions shall be determined at a later date pursuant to the procedures outlined in the Order issued this same date. An appropriate Order follows.