IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JACK J. GRYNBERG and PRICASPIAN DEVELOPMENT CORPORATION, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 10-1088-LPS |
| TOTAL COMPAGNIE FRANCAISE DES PETROLES, TOTAL FINA ELF, S.A., TOTAL S.A., ROYAL DUTCH PETROLEUM COMPANY, SHELL TRANSPORT AND TRADING CO., P.L.C., SHELL PETROLEUM N.V., SHELL EXPLORATION B.V., and SHELL INTERNATIONAL EXPLORATION AND PRODUCTION B.V. f/k/a SHELL INTERNATIONALE PETROLEUM MAATSCHAPPIJ B.V., | : : : : : : : : : : : | |
| Defendants. | : | |

## MEMORANDUM ORDER

I find myself confronted with several difficult questions in a case that has frustrated me. In a lengthy opinion issued in September 2012, I dismissed the claims of Plaintiffs, Jack Grynberg ("Grynberg") and his company, Pricaspian Development Corporation ("PDC"), based on principles of res judicata and statute of limitations. (D.I. 74) Plaintiffs alleged that Defendants – Total Compagnie Francaise Des Petroles and related entities ("Total"), as well as Royal Dutch Petroluem Company and related entities ("Shell") – had participated in a conspiracy that included bribery of government officials in a scheme to deprive Grynberg of billions of dollars to which he was entitled as a result of discovering a massive oil field in Kazakhstan. (*See* D.I. 1, 10) I held, in short, that because Plaintiffs' claims had been dismissed in federal district

1

courts in Colorado and New York, and those dismissals were upheld on appeal by the Tenth Circuit and Second Circuit, the claims also could not be maintained in Plaintiffs' latest lawsuit here in the District of Delaware.

In last year's opinion, I also decided to sanction both Plaintiffs and their attorneys at the law firm Schnader, Harrison, Segal & Lewis LLP ("Schnader"). I sanctioned Plaintiffs pursuant to the Court's inherent authority,[1] based on a finding that Plaintiffs abused the judicial system and acted in bad faith by filing the instant case despite knowing – as a result of the Colorado and New York dismissals due to untimeliness – that the claims were untimely. (D.I. 74 at 31-32) I sanctioned Schnader pursuant to Federal Rule of Civil Procedure 11(b)(2), based on a finding that the original and amended complaints were unwarranted and frivolous. (D.I. 74 at 29)

Schnader had become involved with Plaintiffs after the Colorado and New York litigations and subsequent appeals were completed. Schnader then filed in this Court a complaint on Plaintiffs' behalf that seemed to press common law claims identical to those that had already been dismissed twice.[2] (D.I. 1) Then, after being advised by defense counsel that Defendants would be seeking sanctions due to the filing of a new case here, Schnader filed an amended

---

[1] *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994).

[2] *Compare* D.I. 1 (alleging claims for unjust enrichment, misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and violation of due process) *with, e.g.*, D.I. 12-19 (complaint filed in S.D.N.Y. seeking "declaratory judgment concerning the obligation of Total to account for net profits and to compensate PDC when Total's investment in a giant offshore oil field in northwestern Kazakhstan offshore Caspian Sea known as 'Greater Kashagan' becomes profitable") *and* D.I. 12-10 (amended complaint filed in Colorado alleging unjust enrichment and breach of fiduciary duty against Total based on "appropriat[ing] to itself the value of Grynberg's work and confidential information leading to the largest oil, natural gas, and sulphur discovery in the world in over 40 years, located in the Northeastern Caspian Sea, offshore Kazakhstan"); *see also* D.I. 74 at 22-24.

2

complaint, abandoning the four common law counts in the original complaint and replacing them with a general tort claim supposedly arising under the Civil Code of Kazakhstan. (D.I. 10) While the parties had by then engaged in many years of litigation in which it was alleged and assumed that Colorado law governed Plaintiffs' claims,[3] now for the first time Plaintiffs asserted rights under Kazakh law – which Plaintiffs further contended contains no statute of limitations under the circumstances alleged here, rendering Plaintiffs' claims now timely.

I stated in my 2012 opinion that the amount of sanctions I would impose would be measured by the amount of reasonable attorneys' fees and costs Defendants had incurred in litigating this action, an amount which I anticipated would be quite large. (D.I. 74 at 33, 34, 36) In an order accompanying that opinion, I set out a process for Defendants to submit evidence of their fees and costs and for the parties to brief how much the sanctions award should be and how it should be allocated between Plaintiffs and Schnader. (D.I. 75 at 2) In addition to receiving these materials, I also received Schnader's motion for leave to file declarations (D.I. 77) and Schnader's motion for reargument (D.I. 78). On May 6, 2013, I heard extensive oral argument on all of these matters (see D.I. 99) ("Tr."), and I now turn to resolving the remaining issues.

## MOTION TO FILE DECLARATIONS

Schnader seeks leave to add to the record declarations from several attorneys who either

---

[3]Plaintiffs contended in Colorado that their claims arose under Colorado law. *See, e.g.*, D.I. 12-9 at ¶ 3 (Complaint); D.I. 12-10 at ¶ 3 (1st Amended Complaint); *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption."). Similarly, the New York courts concluded that Colorado is where Total allegedly injured PDC and where PDC's causes of action against Shell accrued. (*See* D.I. 74 at 20) (citing *Pricaspian Dev. Corp. v. Total S.A.*, 397 Fed. Appx. 673 (2d Cir. Oct. 21, 2010); *Pricaspian Dev. Corp. v. Royal Dutch Shell*, 2009 WL 1564110 (S.D.N.Y. June 3, 2009))

litigated the case[4] or reviewed the merits of the asserted causes of action after Defendants made their allegations of sanctionable conduct.[5] Collectively, these declarations describe the extensive due diligence Schnader undertook before filing the original complaint in the instant action and further show the additional diligent efforts Schnader undertook to evaluate Defendants' sanctions contentions. Among the crucial facts I learned – *for the first time* – from the declarations is that Schnader consulted with a leading expert on Kazakh law before even filing the original complaint,[6] Schnader had several attorneys not involved with Plaintiffs' case independently evaluate whether there was a good faith basis for pursuit of their claims,[7] and Schnader did not take this case on a contingency fee and had no economic interest in it beyond collecting its ordinary hourly fees.[8] (*See also* D.I. 78 at 8-9; Tr. at 7-9, 19, 82, 90)

There are compelling reasons for denying Schnader's motion to file declarations. Fundamentally, Schnader offers no persuasive justification for failing to share with me the facts

---

[4]David Smith (D.I. 77 Ex. A), Stephen Fogdall (D.I. 77 Ex. B), and Richard Barkasy (D.I. 77 Ex. E).

[5]Wilbur Kipnes (D.I. 77 Ex. C) and Bruce Merenstein (D.I. 77 Ex. D).

[6]D.I. 77 Ex. B at ¶ 10. With respect to the timing of Plaintiffs' revelation that they intended to plead a claim under Kazakh law, I sympathize with Defendants, who asked, rhetorically, "what were they doing by not mentioning any of that in their original complaint and leading us, as the defendants, to spend our time and effort defending against what appeared to be certainly on the face of it precisely the same claims that had been brought against us in Colorado?" (Tr. at 51-52)

[7]D.I. 77 Ex. A at ¶¶ 4, 10, 12; D.I. 77 Ex. C at ¶¶ 4-5, 8; D.I. 77 Ex. D at ¶¶ 4-6, 8-9.

[8]D.I. 85 Ex. F at ¶ 2.

4

contained in the declarations until *after* I made the very difficult decision to sanction the firm.[9] Obviously, all of the facts contained in the declarations were known to Schnader at the time it received notice of Defendants' intent to move for sanctions, when Schnader reviewed Defendants' draft sanctions motions, when Schnader briefed the sanctions motions, and when I heard argument on the sanctions motions in October 2011. Yet, at none of those times did Schnader deem it worthwhile to advise me (or Defendants) of the pertinent facts demonstrating the firm's diligence. Instead, Schnader pursued a strategy of treating the sanctions motions as frivolous[10] – which they were not – and trying to defeat the motions to dismiss (which would leave the Court no basis to impose sanctions).

Despite all of this, I have decided to grant the motion to file declarations. Sanctions are a highly serious matter,[11] and I'm of the view that they should only be imposed based on a full and accurate understanding of what really occurred, even if it took counsel an unfortunately long time to make those facts known to me. The declarations of the Schnader attorneys contain important information that needs to be factored into the calculus of whether Schnader (and Plaintiffs) should be sanctioned (and into any subsidiary decision as to the amount and allocation of such

---

[9]Defendants are entirely correct when they write, "Schnader had months between the filing of Total's Motion for Sanctions (D.I. 56) on August 12, 2011, and the completion of Schnader's responsive briefing to the Shell Defendants' Motion for Sanctions (D.I. 65) on November 23, 2011, during which time it could have submitted the Declarations." (D.I. 82 at 2) Schnader does not contend that the declarations are new evidence that it could not have shared with the Court much earlier. (Tr. at 12)

[10]Plaintiffs argued, for instance, "the Shell Defendants' Rule 11 motion itself borders on the frivolous." (D.I. 69 at 1)

[11]*See generally Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994) (observing that sanctions "act as a symbolic statement about the quality and integrity of an attorney's work – a statement which may have tangible effect upon the attorney's career").

5

sanctions). So, again, I will grant the motion and consider the Schnader declarations.

## MOTION FOR REARGUMENT

Schnader asks me to reconsider my decision to sanction the firm and to decide, this time, not to do so. In support, Schnader argues that I committed clear errors of law in my September 2012 opinion. (D.I. 78 at 3) I disagree. I believe I applied the correct standard for determining whether Schnader violated its obligations under Rule 11, and the necessary analysis includes a consideration of the substantive decision Schnader took, not just the careful investigation that preceded the decision.[12] It is true, as Schnader argues, that in my opinion I did not expressly address the Supreme Court's decision in *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001), but I did have before me and did consider the parties' competing interpretations of *Semtech*'s applicability,[13] and I reached the same conclusion I would have reached had I chosen to write something about *Semtech*.[14]

---

[12]I disagree with Schnader's contention that "[l]awyers also ***cannot*** be sanctioned if they undertook a 'normally competent level of legal research to support the presentation.'" (D.I. 78 at 2) (quoting *Simmerman*, 27 F.3d at 62) (internal quotation marks omitted, emphasis added) In *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010), the Third Circuit stated that Rule 11 sanctions may only be imposed when a claim or motion is "patently unmeritorious or frivolous." It is conceivable, though unlikely, that an attorney may file a patently unmeritorious or frivolous case even after a diligent investigation. Moreover, the factors a court is required to consider in evaluating counsel's conduct include "whether the pleading, motion, or other paper was based on a plausible view of the law," *Dura Sys., Inc. v. Rothbury Investments, Ltd.*, 886 F.2d 551, 556 (3d Cir. 1989), which again presupposes some inquiry into the substance of counsel's legal views.

[13]*See* D.I. 12 at 8; D.I. 18 at 11 n.19; D.I. 30 at 2; D.I. 60 at 15, 18; D.I. 67 at 21, 46-49, 74-75; D.I. 69 at 4; D.I. 71 at 7-8.

[14]In any event, to make explicit the *Semtek* analysis, I conclude: (1) the current claims are similar enough to the earlier Colorado (and New York) judgments to be precluded; (2) the statute of limitations dismissal in Colorado bars the remedy but does not extinguish the right, so the earlier decisions do not automatically bar relitigation in another jurisdiction, *see In re Randall's*

6

Schnader's request for reargument does not fit neatly into any of the categories for which parties may seek reargument: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). There has been no change in the law. There is also no "new evidence" that was not available earlier. While the declarations are new to me (and Defendants), Schnader knew all of the information in the declarations at the time the sanctions motions were pending. I have already explained that I did not commit a clear error of law (the only ground on which Schnader moves) and Schnader points to no clear error of fact. I am hard-pressed to say that failing to grant reargument would result in manifest injustice. Schnader, a venerable firm populated with sophisticated, intelligent lawyers, made the decisions it made and created a record that – after much thought and effort – persuaded me that the firm should be sanctioned. That did not have to be the result, and it was only the result because of decisions Schnader itself made.

Reargument "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v.*

---

*Estate*, 441 P.2d 153, 155 (Colo. 1968); but (3) the statute of limitations in Delaware – as determined by application of Delaware's borrowing statute – has also expired, because Delaware, under the circumstances (including that Plaintiffs' claim arose in Colorado), would apply Colorado's three-year statute of limitations. *See generally Pricaspian Dev. Corp. (Texas) v. Royal Dutch Shell, plc*, 2009 WL 1564110, at *6-8 (S.D.N.Y. June 3, 2009). I continue to believe that Delaware's borrowing statute, which is "designed to prevent shopping for the most favorable forum," *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1, 16 (Del. 2005), applies here, as Plaintiffs were engaged in forum shopping, trying to find a forum that might give credence to their late-discovered contention that Kazakh law – with its purportedly longer limitations period – applies, even though the prior courts addressing these issues applied Colorado law. (*See* D.I. 74 at 17-21)

7

*Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). As I already noted in connection with the motion regarding the declarations, Schnader offers no persuasive explanation for not presenting the evidence of its diligent investigation to the Court earlier, when I was deciding whether to impose sanctions. It is also true – and important to emphasize, particularly given the very heavy and complex docket in this District – that motions for reargument "should only be granted sparingly." D. Del. LR 7.1.5(a).

So, as with the declarations motion, there are compelling reasons to deny Schnader's motion for reargument. However, I have decided to grant Schnader's motion for reargument and will not be sanctioning Schnader or Plaintiffs. Weighing heavily in my decision is the fact that, had Schnader made the record of its diligence in a timely manner, when the sanctions motions were initially before the Court, I would have decided not to impose sanctions. Whether to sanction Schnader was a tough decision even on the record then before me, and I have no doubt I would have decided this difficult question differently if Schnader had provided the basis to allow me to understand the full scope of its pre-filing investigation.[15] It follows, then, that I should grant reargument and vacate my order of sanctions.[16]

---

[15] I do not agree that "the face of the firm's briefs alone demonstrates the extent of the investigation and legal research that went into them." (D.I. 78 at 2 n.1)

[16] I want to stress that I am vacating my sanctions order because of actions Schnader had taken *before* I ordered sanctions. The firm could not have "cleaned up the mess" by undertaking after-the-fact investigations or consulting with other lawyers or experts after the sanctions award issued. Rather, my decision today is based on my new, belated understanding of what Schnader did at the relevant time: that is, before filing the original complaint. While I was not made aware of those facts until after deciding to impose sanctions (*see generally* D.I. 77 at 1) (Schnader conceding, "[a]t the time the Court issued its [September 2012] decision, the Court did not have the benefit of the full picture of diligence that Schnader performed in assessing the merits of this case"), those events had already occurred well before my decision.

## DEFENDANTS' REASONABLE FEES

While I am not going to be imposing sanctions, this is not due to any failing of defense counsel. I think it important to note that I strongly disagree with Plaintiffs' contention that it was unreasonable for Defendants to spend approximately $1 million to litigate this case – a contention Plaintiffs mistakenly find support for in my conclusion that the case was "frivolous." (*See, e.g.*, Tr. at 42, 45) To the contrary, Defendants' fees were reasonable under the circumstances. Faced with indefatigable Plaintiffs pressing multi-billion dollar claims with the assistance of highly skilled and reputable counsel, who were asserting allegations (including criminal conspiracy and bribery) that could be damaging financially and also harmful to their reputations, Defendants retained counsel who had fought Grynberg earlier and could – and did – defend this action more efficiently than new counsel could have done. Defendants had the burden of getting the Court's attention to hear their allegations of frivolity and then ***proving*** to the Court that the case was frivolous, none of which was either easy or inexpensive.[17] Also, of course, Defendants had no way of knowing whether Plaintiffs would ultimately be made to pay Defendants' fees, so there is no reason to think that Defendants intentionally spent more on their defense than they reasonably believed was justified.

## SANCTIONS AGAINST SCHNADER

Although I have granted the motion for reargument and will not be imposing sanctions on

---

[17] As defense counsel articulated at the recent hearing, "Total has to take that [i.e., this case] seriously because not only is he [Plaintiff] seeking billions of dollars in damages, which regardless of the likelihood of liability is something that affects shareholders . . . it affects what they have to report. It affects how they deal with their partners. It certainly affects how they deal with their partners in Kazakhstan, with the Kazakh government. . . . It was designed and has been designed to cause trouble, to cause the maximum amount of trouble possible for Total and for Shell." (Tr. at 61; *see also id.* at 66, 74)

9

Schnader, I continue to think that the record before me at the time I decided to impose sanctions fully justified the hard decision I made to sanction the firm. On the record then before me, it seemed that Plaintiffs had enticed another firm – likely with promises of a piece of what could be an enormous financial payout, were Plaintiffs ever to prevail on their claims – to take on the very same claims that had been repeatedly dismissed as untimely by other federal courts. At the end of a period of what was asserted (but not shown) to be diligence, Schnader chose to file a complaint that seemed, substantively, to be basically the same as the complaints that had been dismissed in Colorado and New York. Then, only after being warned of sanctions, Schnader came up with a completely new theory of the case, contending that Plaintiffs' tort claims are actually governed by Kazakh law, and adding that under Kazakh law the statute of limitations would remain unexpired.[18] If this were still the record before me, I would adhere to my earlier decision to impose sanctions.

## SANCTIONS AGAINST PLAINTIFFS

It would be a proper exercise of my discretion to retain the sanctions against Plaintiffs. Plaintiffs did not move for reargument of my decision to sanction them pursuant to the Court's inherent authority. I remain troubled with Plaintiffs' evident unwillingness to accept that several federal courts have examined their claims and have determined that they do not state claims on which relief may be granted. In a letter to the Court, Plaintiffs suggest that determining the

---

[18]While the Schnader attorney arguing for Plaintiffs at the October 2011 hearing asserted that "this is not a case of having come upon the theory of the application of Kazakhstan law after the fact as a response to Rule 11 but rather that we decided that we could have done a better job presenting the Kazakh issue at the outset" (D.I. 67 at 41), the same attorney also conceded that a fair reading of the original complaint did not reveal that Plaintiffs were asserting claims under Kazakh law (*id.* at 42-43; *see also* Tr. at 17-18).

amount of sanctions to impose requires only that the Court "simply inquire what sum in fees would have been reasonable for Defendants to expend to obtain dismissal of the supposedly frivolous complaint." (D.I. 98 at 3) If I were to accept Plaintiffs' suggestion, I would have to impose sanctions amounting to the nearly $1 million Defendants reasonably expended.[19]

But, of course, it is not that simple. The decisions that I earlier found sanctionable – the belief that Plaintiffs' claims could survive motions to dismiss after the results in Colorado and New York – involved analysis of technical legal doctrines like res judicata and statute of limitations. These are, as Plaintiffs' counsel correctly observes, "classically legal matters" (Tr. at 48), not analyses that even a sophisticated Plaintiff like Grynberg is expected to undertake himself. Plaintiffs hired highly reputable counsel, who did their own thorough analysis and must have advised Grynberg there was a chance he could prevail on his claims. Plaintiffs were entitled to rely on that expert judgment.

Therefore, having decided not to sanction Schnader, I think it would be wrong to sanction Plaintiffs. So I will vacate the sanctions order against Plaintiffs as well.

---

[19] In a post-hearing filing, I required the parties to provide a list of sanctions that have previously been imposed on Plaintiffs. The parties' list includes ten entries, relating to proceedings occurring between May 1999 and September 2011. (D.I. 95) According to the list, one or both Plaintiffs (or related entities) have been sanctioned for contempt as well as pursuant to state statutes, state procedural rules, and Rule 11 of the Federal Rules of Civil Procedure. (Id.) The amounts initially imposed as sanctions have been as high as $3,000,000, and $1,000,000 plus $10,000 a day until compliance, although the actual amounts Plaintiffs have paid have not exceeded $247,626.03 (for Special Master fees and costs under F.R.C.P. 53(g)(3)). (Id.) As Plaintiffs acknowledge, deterrence is one of the factors the Court must consider when determining the appropriate amount of sanctions to impose pursuant to its inherent authority. (Tr. at 43-44) Were the Court to be assessing how much Plaintiffs need to be sanctioned in order to be deterred, it would have to consider how Plaintiffs responded to prior sanctions orders.

## CONCLUSION

I will end this opinion where I began: expressing my frustration, which is the result of how Schnader chose to litigate. I, like all of my colleagues in the judiciary – including particularly my colleagues in the District of Delaware – am very busy. Had Schnader not mistakenly treated the sanctions motions as frivolous, had Schnader instead submitted its "new" declarations in a timely manner – so I would have had the evidence I needed at the time I was making the difficult decision whether to order sanctions – I would not have imposed sanctions. I would only have dismissed this case . . . and by now Plaintiffs' likely appeal of that dismissal could have been completed and the case would either be concluded or back here on remand. Most importantly, I could have made the difficult, time-consuming sanctions decision just once, and not – as now – twice.

Nevertheless, for the reasons stated in this opinion, IT IS HEREBY ORDERED that:

1. Schnader's motion to supplement the record (D.I. 77) is GRANTED.

2. Schnader's motion for reargument (D.I. 78) is GRANTED.

3. The Court's previous order (D.I. 75 at ¶¶ 8-9) is VACATED to the extent that the previous order imposed sanctions on Plaintiffs and Schnader.

4. The Clerk of Court is directed to CLOSE this case.

_____
UNITED STATES DISTRICT JUDGE